Hannah Woods, to use of J. W. Irwin, Appellant, *v.* N. Adeline Irwin, Exrx. of Ninian Irwin, deceased.

*Executors etc.—Purchase of claim against estate—Trust.*

If an executor purchases a claim against his testator's estate for less than its face value, he can recover from the estate only the amount he paid for the claim.

Two nephews of an executrix bought for a small sum a large claim against testator's estate, and agreed to hold the claim in trust for the executrix. The executrix had no knowledge of the transaction. Her attorney

subsequently advised her to confess judgment as executrix to the persons owning the claim. She did so, without any knowledge, however, that the judgment was for her own benefit. *Held* that, as against other creditors of the estate, she was entitled to only the amount that had been paid for the claim.

Argued Jan. 30, 1894. Appeal, No. 48, July T., 1893, by plaintiff, from decree of C. P. Montgomery Co., Oct. T., 1886, No. 201, opening judgment. Before GREEN, WILLIAMS, MC-COLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Issue to determine validity of judgment.

From the record it appeared that on Sept. 19, 1892, the court awarded an issue to determine the following facts: " (1) Was the claim in controversy purchased with the moneys of the estate? (2) Was the claim in controversy purchased for the benefit of Mrs. N. Adeline Irwin? (2½) If so, was it so purchased with her knowledge? (3) Is Mrs. N. Adeline Irwin the legal or equitable owner of any part of said claim? (4) Was the judgment confessed for a greater amount than was legally due at the time?"

At the trial the jury answered questions 1, 2½ and 4 in the negative, and questions 2 and 3 in the affirmative.

The following opinion was filed by WEAND, J.:

" On Oct. 2, 1874, Ninian Irwin borrowed from Hannah Woods five bonds of $1,000 each, of the Danville, Hazelton & Wilkes-Barre Railroad Co., which he agreed to return within three months.

" On Oct. 15, 1874, Irwin borrowed ten more of the same bonds of same denomination which he agreed to return in six months. Irwin died in 1877, without having returned either of the bonds.

" Mrs. Woods after the death of Irwin assigned one-half interest of her claim to John Q. Lane. Both parties afterward, Feb. 9, 1881, assigned the whole claim to one J. Wilson Irwin, for $1,000. Ninian Irwin left a will in which he appointed his wife N. Adeline Irwin his executrix. Mr. G. R. Fox acted as counsel for Mrs. Irwin in the settlement of the estate and appears to have had the entire management of it. He also acted as counsel for Mrs. Woods to collect her claim from the estate, and after the assignment to J. W. Irwin he retained possession of the papers, thus acting for all parties interested.

" The negotiation for the purchase of the claim from Mrs. Woods and Mr. Lane was through Mr. Fox, who paid the money to Mr. Lane. Upon the back of the assignment from Woods and Lane to Irwin, and of same date, appears the following in Mr. Fox's handwriting:

" ' This purchase was made one half with money of J. Wilson Irwin and one half with money of Milton Stewart, and to be held by J. W. Irwin in trust for Mrs. N. Adeline Irwin's use and to be hers on refunding out of the moneys when collected $500 to each of said parties.'

" There also appears on this paper as of same date another indorsement as follows :

" ' This assignment with the accompanying papers is left with me for the collection of the money from the estate of Ninian Irwin, deceased, and out of the net proceeds less counsel fees and expenses to pay J. Wilson Irwin $500 with interest from Feb. 9, 1881, and to Milton Stewart $500 with interest from Feb. 9, 1881, if so much shall be realized ; and if less, then to divide the amount received between them pro rata, and if more than a sum sufficient shall be realized to pay them in full, then to pay the net balance to George Irwin, son of said Ninian Irwin.'

" Neither George Irwin nor Mrs. N. A. Irwin were aware of these indorsements or that they had any interest in the claims until after judgment was obtained. The Danville, Hazelton & Wilkes-Barre Railroad defaulted in the payment of its bonds. Under foreclosure proceedings the road was purchased by a syndicate of the bondholders, who reorganized it as the Sunbury, Hazelton & Wilkes-Barre Railroad, and sold it to the Pennsylvania Railroad, who gave in payment two series of bonds guaranteed by themselves. The old bonds were convertible into the new, but by reason of Ninian Irwin's default Mrs. Woods lost the benefit of such right to convert. Mr. Fox placed the claim in the hands of another attorney who then brought suit in the name of ' Hannah Woods, to use of J. W. Irwin and Milton Stewart, trustee.' In this suit Mr. Fox acted as attorney for Mrs. Irwin as executrix and advised her to confess judgment which she did for $15,525, said suit being to Dec. T., 1886, No. 19.

" Mrs. Irwin says in her testimony that she did not then

know that the judgment was for her benefit, and that if she had known it she would not have confessed judgment for $15,000, when only $1,000 was paid.

" Subsequently .J. M. Albertson & Sons, who held a judgment against Ninian Irwin, petitioned the court to open the judgment to allow them to interpose the plea of the statute. The judgment was opened and on a trial the court directed a verdict for the defendant. This judgment was reversed by the Supreme Court. See Woods v. Irwin, 141 Pa. 278.

" Mr. Stewart having declined to appeal the case to the Supreme Court, he was induced by Mr. Fox to assign the claim to George Irwin, who indemnified him against costs. Albertson & Sons then applied to have the judgment opened upon the ground that it was fraudulently confessed by the executrix and is held and enforced against the decedent's estate for a sum many times the amount actually due thereon and for her own personal use and benefit, etc. The court thereupon awarded an issue to determine several questions of fact. Those found in favor of the contestants and upon which, and for other reasons, they ask the court to open the judgment, are, 1st, that the claim was purchased for the benefit of Mrs. N. A. Irwin, and that she is the legal or equitable owner of part of said claim.

" George Irwin distinctly asserts that he knew nothing of any interest he might have had in this claim apart from the assignment to him on April 11, 1890, from Milton Stewart, who describes himself as trustee, who survived J. W. Irwin, and this assignment it is testified was for the purpose of carrying the case to the Supreme Court after Mr. Stewart had declined so to do. There is no evidence to show that Mr. Fox was authorized to mark the claim to the use of George Irwin, and the only interest therefore that the latter can have is to the extent of five hundred dollars. Mrs. Irwin therefore stands as claimant for all that may be recovered over and above $1,000 with interest.

" Even if we concede that the purchase or assignment for the use of Mrs. Irwin was a revocable trust, we must still regard it as in full force, for nothing has been done to show that such right to revoke was ever claimed or exercised, and the suit which has passed into judgment was brought by Irwin .

and Stewart, trustee, thus admitting that the claim was held for the use of some one else, and as the indorsement of Mr. Fox was directed to be made for Mrs. Irwin's use by the purchaser, she must be regarded as having an interest therein even without the finding of the jury upon that point. Mr. Fox in his testimony says: 'The assignment was left in my hands where it has been ever since, with directions that, upon receipt of the money, if there was enough to pay the principal these gentleman advanced and interest, they should get their money back, and if not, it should be divided pro rata between them, and that if it realized more, the excess I should pay for the benefit of Mrs. Ninian Irwin.'

"There can be no other conclusion drawn from the facts and circumstances of this case than that J. Wilson Irwin and Milton Stewart bought this claim, for all it was considered by them then worth, not as an investment or venture to make money for themselves, but with the understanding, intention and instructions that beyond the amount paid by them it was to belong to Mrs. Irwin, who was the executrix.

"It must be conceded that if she had bought the claim for $1,000, either directly or through her counsel, any advantage gained would enure to the benefit of the estate. It is only necessary to refer to Hill v. Frazier, 22 Pa. 320, where it is said : 'It is a universal rule that one to whom the management of any business is confided, cannot create other relations which will put him in an attitude of hostility to his principal, or cestui que trust;' and to Saeger v. Wilson, 4 W. & S. 501, 'compromises by which money is gained or saved by executors or administrators or trustees, enure to the benefit of those for whom they act and not for the benefit of the trustee.' In the case of Heager's Executors, 15 S. & R. 65, it was ruled that, 'In chancery the principle is one never departed from, and is as binding as any axiom of the common law, that he who takes upon him a trust, takes it for the benefit of him for whom he is intrusted, but not to take any advantage for himself.' 'A trustee shall never be permitted to raise in himself an interest opposite to that of his cestui que trust.'

"Is the rule different where the purchase, as in this case, is made for the benefit of the trustee, although without his knowledge? The application of the rule does not depend upon ac-

tual fraud. The doctrine is a rule of public policy necessary to preserve honesty and fidelity in the administration of trusts: Fisher's Appeal, 34 Pa. 29. It must not be forgotten that this whole business was managed by the counsel for Mrs. Irwin and the estate. It was his duty to protect the estate as much as it was the duty of the executrix and his knowledge was her knowledge. As he could acquire no interest for himself, antagonistic to the estate, neither could he do so for his client, the executrix. She could not intrust him with the sole management of the estate and thus allow him to secure for herself an advantage which she was not permitted to do herself. He knew that the claim could be bought for $1,000 and he secured its purchase with the object, as he says, of having it in friendly hands. But what kind of friendship would that be which would buy a claim for $1,000, and then claim $15,000 for it. The rule appears to be imperative that the trustee cannot acquire an advantage or interest in a claim against the estate beyond the amount actually advanced for it. In this case by inducing others to buy up the claim for her use she was enabled to hold it until an advantage was secured hostile to the trust.

"In the note to Keech v. Sanford, 1 Leading Cases in Equity, Hare and Wallace's Notes, 3d Am. ed., p. 91, it is said: 'It is a principle firmly maintained in the equity jurisprudence of this country, that a trustee is not at liberty to act or contract for his own benefit in regard to the subject of the trust, and that the advantage of all that he does about the trust property shall accrue to the cestui que trust, if the latter desire it. An independent interest in a trustee in the subject of the trust, would in its very nature be an interest hostile to the cestui qui trust, and that is repugnant to the relation which the trustee has assumed. So far as he acts about the property for himself distinctly, he divests himself of the character of trustee for another, and this by his own act he cannot do. Whenever one person is placed in such relation to another by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him or interested with him in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated, and in Hill v.

Frazier, supra, it was said that, ' One who is charged with the duty of paying debts cannot make a speculation by buying them for his own use, whether he does it with his own money or not.' The principle would be of little value if the act condemned could be done by the counsel for the trustee even without her consent or knowledge.   The counsel in many cases, as in this, transacting all the business of the estate, possessed of the knowledge thus gained, could thus secure claims for the trustee indirectly, what the law could not permit to be done directly. No better illustration of the mischief of such a rule could be had than is furnished in this case.   If the counsel had at once notified Mrs. Irwin of the assignment and her interest therein she could have relinquished her claim or presented it for the benefit of the estate and thus have acted as the law requires, and she states in her testimony that she would not have confessed the judgment for more than $1,000 had she known the facts.   By concealing them from her she was induced to claim an advantage for herself as against those she represented in her capacity of executrix.   We are therefore of opinion that as to other creditors this judgment cannot be enforced for more than $1,000 with interest from Feb. 9, 1881, but that it can be used until a dividend thereon pays that amount.   We cannot therefore open or set aside the judgment, but by virtue of the power vested in us as a court of chancery we can restrain collection beyond the amount really due."

The court made the following order :

" And now April 13, 1893, it is ordered and decreed that the judgment, Woods to use v. Irwin, executrix, etc., entered in judgment docket, L. 1, P. 127, Nov. 26, 1886, is declared null and void for all amount over and above a dividend amounting to $1,000, with interest from Feb. 9, 1881, to be realized thereon, and is not to be enforced or considered binding against the estate of William Irwin, deceased, after the dividend on said judgment shall pay plaintiff the said sum of $1,000 with interest as aforesaid."

*Error assigned* among others was above order, quoting it.

*Montgomery Evans*, for appellants.—In the authorities relied upon by the court below, the purchase was actually made by the trustee with his own money.   And it is true that a trustee

shall never be permitted to raise in himself an interest opposite to that of his cestui que trust. But that was not the case here.

The purchase by the nephews was perfectly legal. Being legal, then, they could do what they willed with their own.

The reason of the law is its life, and unless some advantage might be gained by reason of the relation, the principle does not apply: Chorpenning's Ap., 32 Pa. 315; Hammond's Ap., 123 Pa. 503.

A parol gift of a chose in action, in trust for the use of another, may be countermanded and revoked at any time before the trust is executed: Lyon v. Marclay, 1 Watts, 271; Thornton on Gifts, §§ 106, 114; Houser v. Singiser, 1 Leg. Ch. 30; Sessions v. Moseley, 4 Cush. 87; Smith v. Ferguson, 90 Ind. 229; 46 Am. Rep. 216.

This was a revocable gift and not sustainable either as a gift or as an equitable assignment, with no consideration to support it: Kennedy v. Ware, 1 Pa. 445; Campbell's Est., 7 Pa. 100; Zimmerman v. Streeper, 75 Pa. 147; Scott v. Lauman, 104 Pa. 593.

If the subject of the gift be not capable of actual delivery, there must be some act equivalent to it. The donor must part not only with the possession, but with the dominion of the property. If the thing given be a chose in action, the law requires an assignment or some equivalent instrument, and the transfer must be actually executed: 2 Kent, 439; Bond v. Bunting, 78 Pa. 210; Walsh's Ap., 122 Pa. 177.

*Charles Hunsicker* and *George W. Rogers, Henry Freedley* with them, for appellees.—A trustee cannot gain profit by purchasing a claim against an estate; the instant he acquires it, it is paid and satisfied for excess over what is actually paid in the purchase: Hill v. Frazier, 22 Pa. 324; Saeger v. Wilson, 4 W. & S. 504; Everhart v. Searle, 71 Pa. 261; Heager's Ap., 15 S. & R. 65; Fisher's Ap., 34 Pa. 31; Keller v. Lieb, 1 P. & W. 223; Weaver v. Wible, 25 Pa. 270; Cake's Est., 162 Pa. 584; Bennett's Case, 10 Ves. 389; Kerch v. Sandford, 1 Wh. & Tud. L. Cas. Eq. 94.

But the doctrine is not limited, as appellant contends. It extends to every case where the trustee buys for himself, for his

own benefit, with his own money or the money of another, and affects it with the same trust in the hands even of a stranger if a stranger employ the fiduciary as his agent in the purchase : Bennett's Case, 10 Ves. 381 ; Lazarus v. Bryson, 3 Bin. 63 ; Wescott v. Tyson, 38 Pa. 89.

Persons dealing as trustees and executors must put their own interest entirely out of the question : Perry on Trusts, §§ 169, 17, 171, 172 ; Leading Cases on Trusts, 175 ; Account of Heager's Exr., 15 S. & R. 65 ; Greiner's Est., 2 Watts, 414 ; Abbott's Exr. v. Reeves, Buck & Co., 49 Pa. 494 ; Bixler v. Kunk, 17 S. & R. 298 ; Shuman's Ap., 27 Pa. 66 ; Rosenberger's Ap., 26 Pa. 57 ; Schoch's Ap., 33 Pa. 351 ; Berryhill's Admr.'s Ap., 35 Pa. 245 ; Raybard v. Raybard, 20 Pa. 308 ; 1 Story's Eq. Jurisp. § 222 ; Witman's Ap., 28 Pa. 378 ; Hermstead's Ap., 60 Pa. 429 ; Stewart's Est., 140 Pa. 135.

OPINION BY MR. JUSTICE McCOLLUM, Oct. 1, 1894 :

At the instance of the attorney of the estate, the Woods claim against it was purchased by the nephews of the executrix for the sum of one thousand dollars, and in an action upon the claim in their names as trustees, she, acting under his advice, confessed a judgment against the estate for $15,525, and costs. The claim was purchased Feb. 9, 1881, and the judgment was entered Nov. 26, 1886. The negotiations for the purchase were conducted by the attorney who recommended it ; the assignment of the claim was delivered to him by the sellers, who received his check in payment of the sum for which they sold it, and he immediately made a memorandum on the back of the assignment showing how it was acquired and under what instructions he held it. These instructions were to collect the claim, account to the purchasers for the money they invested in it, with interest thereon, and to pay the balance to the executrix. When the creditors of the estate attacked the judgment entered on the claim and succeeded in the lower court in setting it aside, he advised the surviving plaintiff and trustee therein to appeal to this court, but the latter declined to do so until indemnity was furnished against all costs and expenses of such appeal. It seems from this that he was anxious to maintain the judgment against the estate. A singular fact in connection with the transaction is that he carefully concealed it from

the executrix for whose benefit it was made. For ten years or more the trust feature of it was known only to him and the purchasers of the claim. The silence of the parties to the transaction in reference to the trust created by it is suggestive of a consciousness, or, at least, an apprehension on their part that the law would not enforce the trust against the creditors of the estate.

We think the evidence in the case fairly establishes the existence of the facts recited, and that it fully justifies the conclusion that the nephews of the executrix were persuaded by the attorney of the estate to purchase the Woods claim " with the understanding, intention and instructions " that he should collect it and pay to her whatever was realized upon it above the cost of acquiring it. Such is the conclusion reached by the learned judge of the court below upon a careful consideration of all the testimony, and we see no reason to doubt the correctness of it. The controlling question arising from and founded upon it is whether the trust in favor of the executrix is enforceable against the creditors of the insolvent estate. The issue is in fact, though not in form, between them. The purchasers of the claim are not now demanding, and they have never demanded, anything from the estate on account of it beyond the amount they paid for it, together with interest thereon. The transaction evidenced by the assignment from one of them to Geo. W. Irwin was made to gratify the desire of the attorney of the estate to sustain the judgment, and it does not affect in any degree the rights of the real litigants, nor was it intended to do so. The law does not countenance speculation in claims against an estate by a person charged with the duty of administering it. He is not allowed to purchase such claims for his own profit. If he buys them for less than their face value he can only recover from the estate the amount he paid for them. If, in this case, the executrix had bought the Woods claim with her own money for one thousand dollars, that would be all she could recover from the estate on account of it. The same rule applies to her attorney, who was her legal adviser in the administration of the estate, and who did most of the work pertaining to it. If she had induced her nephews to buy the claim, as they did, for her benefit, would she have been entitled to the profits, if any, derived from the purchase?

If so, she would have acquired by it an interest in the claim adverse to the estate she represented, and accomplished by indirection what she could not do directly, and what the law does not tolerate.   The creation of the trust in her favor was due to the efforts of her counsel, and the parties to the transaction did not inform her that she was the beneficiary in it.   But we think these facts do not give additional force to her contention or place her on better ground in this litigation than she would have occupied if she had done for herself what her counsel did for her.   To this point the language of the learned judge of the court below is so pertinent that we quote it.   He said : ".It must not be forgotten that this whole business was managed by the counsel for Mrs. Irwin and the estate.   It was his duty to protect the estate as much as it was the duty of the executrix, and his knowledge was her knowledge.   As he could acquire no interest for himself antagonistic to the estate, neither could he do so for his client, the executrix.   She could not intrust him with the whole management of the estate and thus allow him to secure for herself an advantage which she was not permitted to do herself."   Without further elaboration of the subject we conclude that there is no error in the rulings, instructions or decree complained of.   The latter is in conformity with well established principles recognized in the textbooks and enforced in the cases cited in the opinion of the court below, and in the briefs of the appellees.

The specifications of error are overruled.

Judgment affirmed, and appeal dismissed at the cost of the appellant.